IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

SHEILA JO NYMAN,

       Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

No. C15-3099

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.     INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     A.    Nyman's Education and Employment Background . . . . . . . . . . . 3
     B.    Administrative Hearing Testimony  . . . . . . . . . . . . . . . . . . . . 4
          1.    Nyman's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . 4
          2.    Vocational Expert's Testimony  . . . . . . . . . . . . . . . . . . 6
     C.    Nyman's Medical History  . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.   CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     A.    ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . 9
     B.    Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . 12
          1.    Credibility Determination . . . . . . . . . . . . . . . . . . . . 12
          2.    Graves' Opinions  . . . . . . . . . . . . . . . . . . . . . . . . . 17
          3.    Hypothetical Question . . . . . . . . . . . . . . . . . . . . . . . 19

V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.    ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Sheila Jo Nyman on March 12, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Nyman asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Nyman requests the Court to remand this matter for further proceedings.

# II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

---

[1] On April 17, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

. . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTS

### A. Nyman's Education and Employment Background

Nyman was born in 1976. She is a high school graduate. After high school, she completed training to become a certified nursing assistant ("CNA"). In the past, Nyman worked as a CNA and cashier.

## B. Administrative Hearing Testimony

### 1. Nyman's Testimony

At the administrative hearing, the ALJ inquired about Nyman's back pain. Nyman stated that she has constant back pain. At its worst, she rates her pain at 9 on scale of 1 to 10, with 10 being the greatest amount of pain. According to Nyman, she has significant back pain 2 or 3 days per week. When her back pain is bad, she stays in bed all day, and tosses and turns to get comfortable. Nyman also testified she suffers from asthma and migraine headaches. She indicated that activity, such as walking, along with dust and other outside irritants makes her asthma worse. She stated her migraine headaches are primarily associated with her asthma and allergies. Additionally, Nyman testified she has foot pain and right shoulder pain.

Turning to activities of daily living, the ALJ inquired about Nyman's ability to go grocery shopping. Nyman explained that due to anxiety, she only goes shopping with her children or a close friend. She testified that shopping "takes me longer than it does normal people. I can go in there just for one thing and I'm there for 35 minutes."[2] When asked why it takes her so long, Nyman replied that she walks slow due to asthma, back pain, and foot pain. As for housework, such as cleaning and laundry, Nyman stated that her children help her, but "I take some breaks and I try to get as much done as I can, or sometimes my friend will come over and just help me."[3]

Nyman's attorney also questioned Nyman. Nyman's attorney addressed Nyman's mental health problems. Nyman testified that she suffers from depression, anxiety, and PTSD related to fear of an abusive ex-boyfriend. According to Nyman, at times, fear of her former boyfriend makes her not want to leave her house. Nyman also stated that her anxiety causes her to become easily overwhelmed in work and social type situations. She

---

[2] Administrative Record at 237.

[3] *Id.*

testified that she needs to leave such situations when she becomes overwhelmed. Specifically, Nyman testified that she gets "overwhelmed with crying, and anxiety, and my depression. It just, it all closes in. And if I leave to go into a different spot of a room maybe I can get my head back and [it] doesn't take much [time] then I can go back, just be all over again."[4]

Nyman's attorney and Nyman also had the following colloquy regarding her functional abilities:

> Q: How long can you stand at one period of time, if you were standing like at a counter or something like that?
> A: It varies day to day, but I would say 10 to 15 minutes.
> Q: What about sitting? If you were sitting here and you had to stand up really bad here and stretch, how long can you sit?
> A: It can vary up to a half an hour.
> Q: Do you have to be able to change positions?
> A: Yes, I'm constantly changing positions. I shift, I, I do range of motions with my legs in order to move my butt and my back. . . .
> Q: Okay. How about walking, how far can you walk?
> A: If I can make it the whole way it's once around my sidewalk, a half a sidewalk, go back on the road and then another sidewalk.
> Q: Okay, so around the block?
> A: And its not a full block.
> Q: Okay.
> A: It's maybe a half a block.
> Q: Okay. How about bending over, kneeling on your hands and knees, any of that stuff?
> A: I really can't, I know my son does everything or my kids, they pick up the toys, they do the, I'm sweeping, they get the dustpan. And I can't bend over to do it.
> Q: What about lifting, how much can you lift? What sort of things do you lift?

---

[4] Administrative Record at 247.

A:     A gallon of milk is pushing it, take it inside sometimes.
       But I would say ten pounds[.]

(Administrative Record at 251-52.)

Additionally, during her alleged disability time period, Nyman testified that she attempted to work at a coffee shop. She stated that she worked approximately 2 hours per week, or 10 hours per month. Nyman's employment at the coffee shop ended because she was unable to work even 10 hours per month.

## 2.  *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Julie Svec with a hypothetical for an individual who is:

> capable of performing light work . . . can occasionally climb, balance, stoop, kneel, crouch, and crawl, must avoid concentrated exposure to extremes of heat, extremes of cold, and, and exposure to pulmonary irritants, such as fumes, odors, dust, gases, so forth, and can perform simple routine tasks.

(Administrative Record at 263.) The vocational expert testified that under such limitations, Nyman could perform her past work as a cashier. The ALJ asked a second hypothetical that was identical to the first hypothetical except the individual is also limited to sedentary work. The vocational expert testified that under such limitations, Nyman would be unable to perform her past relevant work, but could perform the following jobs: (1) assembler, (2) ticket checker, and (3) addresser. The ALJ asked a third hypothetical which was identical to the first hypothetical except that the individual should also have no direct contact with the public, and only occasional interaction with co-workers. The vocational expert testified that Nyman could perform the following light jobs with the additional limitations: (1) folder, (2) cleaner, and (3) sorter. Similarly, the ALJ asked a fourth hypothetical that was identical to the second hypothetical except that the individual would have the same social limitations as the third hypothetical. The vocational expert testified

6

that Nyman could perform the following sedentary jobs with the additional limitations: (1) addresser, (2) document preparer, and (3) assembler. Finally, the ALJ inquired whether the individual could be competitively employed if he or she missed work 1 or 2 days per week. The vocational expert testified that under such a limitation, Nyman would be precluded from competitive employment.

## C. Nyman's Medical History

In May 2011, Nyman met with Jill Sweeney, LMSW, to determine eligibility for remedial services at New Directions Counseling Services in Waterloo, Iowa. Nyman reported having difficulty maintaining steady employment, having "significant" relational problems due to severe mood swings, irritability with other people, and symptoms of depression and anxiety. Specifically, Nyman's symptoms included daily depressed mood, diminished interest in pleasurable activities, loss of energy, feelings of worthlessness, diminished ability to think and concentrate, excessive anxiety, irritability, and sleep disturbance. Upon examination, Sweeney diagnosed Nyman with generalized anxiety disorder, major depressive disorder, and possible personality disorder. Sweeney concluded that:

> [Nyman's] avoidance of social interactions appears to be the result of elevated levels of anxiety; however, she has been spending more time with family as a social support. [She] appears to be experiencing some symptoms of depression. She is presenting anxiety symptoms that appear to be exacerbating other behavioral issues. [Nyman] demonstrates significant deficits in anger management. The presenting behaviors have led to a marked deficit in relationships.

(Administrative Record at 669-70.) Sweeney recommended individual counseling and mental health therapy as treatment.

On December 20, 2011, Nyman met with Dr. Kelly D. Ross, M.D., for a "disability physical." In reviewing Nyman's health history, Dr. Ross noted that Nyman is:

7

> morbidly obese and weighs over 300 pounds and thus has joint issues and stamina issues. In particular her knees seem to hurt. She has migraine headaches. . . . She takes naproxen and other over the counter pain medications. She has asthma. . . . She has mental health issues. She has post-traumatic stress disorder, which she alleges is due to abusive relationships with men. She has a mood disorder/bipolar disorder. . . . She gets out to pick her kids up from school and otherwise does not sound like she gets out of the house all that much. . . . She says she has sleep issues.

(Administrative Record at 615.) Upon examination, Dr. Ross found that Nyman:

> apparently has some transient tingling in the hands, which could be consistent with carpal tunnel syndrome. She seemed to indicate that she had some loss of sensation as we marched down to the feet, but it was not completely consistent. Sometimes the sensation would come back as I marched down toward the toes and thus it was hard to know what to make out of her nuerosensory exam. She seemed to walk reasonably well without major limping. Her deep tendon reflexes are reasonably normal and symmetrical, both upper and lower extremities. . . . She may have some limitations that are probably more related to her obesity than to any kind of arthritic issues. She gets full extension with her knees. . . . She had pretty complete use of her hands as far as being able to make a grip and use her fingers with coordination.

(Administrative Record at 616.) Dr. Ross diagnosed Nyman with obesity, depression, PTSD, and degenerative joint disease, probably related to weight particularly with her knees. Dr. Ross also noted irritable bowel type symptoms, asthma, and migraine headaches, "none of which appear to be hugely disabling at this moment."[5]

On January 20, 2012, Karen Graves, ARNP, a mental health treating source, filled out a "Report on Incapacity" for Nyman for the Iowa Department of Human Services. Graves diagnosed Nyman with mood disorder and PTSD. Graves reported that Nyman

---

[5] Administrative Record at 616.

was capable of caring for children in her home. However, Graves opined that Nyman was incapable of performing work of any kind. Lastly, Graves determined that Nyman could participate in classroom training or instruction for less than 10 hours per week. Graves suggested that Nyman be allowed to "leave [a] situation if [she is] feeling overwhelmed."[6]

On October 24, 2012, Nyman met with Dr. Erin C. Peterson, D.O., regarding low back pain. Nyman described her back pain as starting:

> in the low back and is constant. It is worsened with any kind of activity but also worsened with sitting. It radiates up into the back and also down into the legs. She notes pain radiates down the back of the legs to her knees (relatively consistently). Intermittently there is numbness in the legs, right more than left, and weakness of the legs in that they feel like the knees are going to give way. There is tingling that comes and goes in both legs. There is no change in her bowel or bladder function. She describes her pain as a 5 to 6 out of 10 in intensity on a relatively average basis.

(Administrative Record at 841.) Dr. Peterson noted that X-ray findings included "stable mild" degenerative disc disease in January 2012, and relative degenerative disc disease at L2-3 in September 2012. The X-rays showed no spondylosis. Upon examination, Dr. Peterson diagnosed Nyman with chronic low back pain and intermittent bilateral lower extremity pain. Dr. Peterson recommended medication and pool therapy as treatment.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Nyman is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

---

[6] Administrative Record at 631.

> (1) whether the claimant is currently employed; (2) whether
> the claimant is severely impaired; (3) whether the impairment
> is or approximates an impairment listed in Appendix 1;
> (4) whether the claimant can perform past relevant work; and,
> if not, (5) whether the claimant can perform any other kind of
> work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful
> activity. If so, the claimant is not disabled. Second, the ALJ
> determines whether the claimant has a severe medical
> impairment that has lasted, or is expected to last, at least
> 12 months. Third, the ALJ considers the severity of the
> impairment, specifically whether it meets or equals one of the
> listed impairments. If the ALJ finds a severe impairment that
> meets the duration requirement, and meets or equals a listed
> impairment, then the claimant is disabled. However, the
> fourth step asks whether the claimant has the residual
> functional capacity to do past relevant work. If so, the
> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671

F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Nyman had not engaged in substantial gainful activity since January 1, 2009.[7] At the second step, the ALJ concluded from the medical evidence that Nyman had the following severe impairments: degenerative disc disease, obesity, asthma, fibromyalgia, personality disorder (cluster B personality traits), depression, anxiety, and PTSD. At the third step, the ALJ found that Nyman did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Nyman's RFC as follows:

> [Nyman] has the residual functional capacity to perform sedentary work . . . except: she can occasionally climb, balance, stoop, kneel, crouch and crawl; she should avoid concentrated exposure to extremes of heat and cold, and pulmonary irritants. She can perform simple, routine task[s]. She should have no direct interaction with [the] public. She can have occasional interaction with coworkers but no team goals/tasks. She can have occasional interaction with supervisors.

---

[7] Nyman initially alleged a disability onset date of February 1, 2002, but at the administrative hearing she amended the onset date to January 1, 2009. *See* Administrative Record at 200 (ALJ's decision); 225 (transcript of administrative hearing); *see also* Nyman's Brief (docket number 13) at 6; Commissioner's Brief (docket number 14) at 2, n.1.

(Administrative Record at 206.) Also at the fourth step, the ALJ determined that Nyman is unable to perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Nyman could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Nyman was not disabled.

## B.  Objections Raised By Claimant

Nyman argues the ALJ erred in three respects. First, Nyman argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Second, Nyman argues the ALJ failed to properly consider and weigh the opinions Karen Graves, a treating nurse practitioner. Lastly, Nyman argues the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1.    Credibility Determination

Nyman argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Nyman maintains the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues the ALJ properly considered Nyman's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the

objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 ((8th Cir. 2010); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066; *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010).

In his decision, the ALJ addressed Nyman's subjective allegations as follows:

> After careful consideration of the evidence, the undersigned finds that [Nyman's] medically determinable impairments could reasonably be expected to cause the alleged symptoms;

however, [Nyman's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. . . .

[Nyman's] allegations of debilitating psychological symptoms are at odds with her activities of daily living, which appear to be only mildly impaired. [Nyman] cares for three young children. Her oldest son resides with her parents. She testified that her children are with her 90% of the time when they are not in school. There is no question that she is independently able to meet their needs. She takes them to school, performs household chores, shops, does laundry, and prepares meals. She testified that she required assistance doing these things and that she cannot do yard work, but the limitations she described were physical rather than mental, such as requiring a cart to shop at Wal-Mart and needing the children's help with lifting laundry. Although her personal care is sometimes questionable, for the most part her providers have noted that she is appropriately groomed and dressed. She is able to manage her household financially. Despite her fatigue, she exercises at the YMCA by walking and swimming, inconsistent with significant levels of fatigue. . . .

As to [Nyman's] credibility, there are significant issues in this case. First, the alleged onset date is not supported by medical evidence of record. It seems to be based not upon [Nyman's] physical and/or mental conditions, but appears to be tied to the date she was fired from her job. There is no evidence that this was for reasons related to her alleged disabilities. There is no evidence of an injury or medical diagnosis on or about that date. The only evidence of medical treatment is that a month later [Nyman] went to the doctor explaining that she had stopped her medication and asking for refills. Based on the evidence, it would seem that any symptoms around the alleged onset date were the result of her failure to properly medicate her conditions.

In addition, [Nyman] testified to physical symptoms and treatments at the hearing that are not substantiated in the medical records and, to a troubling extent, her testimony was

inconsistent with the medical records. For example, there is no evidence of treatment for IBS or heel spurs. She has reported prior diagnoses of these conditions, but admits that she has not been treated for heel spurs. [Nyman] cannot make a persuasive case for disability based on diagnoses which are not part of the record and conditions that have not been treated. Her testimony was, in several instances, contrary to the medical evidence. For instance, she attributed her urinary incontinence to childbirth and said that it would require surgery. In fact, it is attributable to substantial weight gain following her hysterectomy and she has been referred for a consultation with a specialist to evaluate the next step in treatment. There is no record evidence that she has seen a specialist or that surgical intervention has been recommended. [Nyman] says that she has daily headaches and migraines so severe that she has to go to the emergency room for treatment. Not only does the record lack evidence of emergent care for this condition, it does not indicate that she has reported these visits to her primary care physician. There is no evidence that she has been treated for migraines by her regular doctor, except for taking pain medication prescribed for other conditions. [Nyman] has multiple conditions, some of which are more severe than others, and the combined effect of her medical problems has been taken into account in formulating the residual functional capacity, but has a record of not seeking medical attention for conditions she claims are disabling. Finally, she has given inconsistent information regarding her sobriety. At times, she has stated that she has been clean and sober since 2001, but at one doctor's appointment she indicated that her drug and alcohol use had been in remission for only six months. At a DDS teleconference, the [she] had no[] confusion or other difficulty, other than some problems recalling dates (Exhibit 2E), which does not seem too uncommon. To her credit, [Nyman] is no longer having problems with illegal drugs and alcohol use, but the inconsistencies in information provided to her medical providers are significant and troubling, in terms of evaluating her veracity.

There is also an issue of noncompliance. The medical evidence shows that failure to take medication as prescribed has been an issue since the alleged onset date and at the hearing she testified that she is still not taking her asthma medication as prescribed. She also claims persistent breathing problems due to asthma, but continues to smoke, having been repeatedly counseled to stop. She has been told that her coughing, wheezing, and shortness of breath would improve significantly if she stopped smoking. She refuses to do so, despite offers of referrals and medications, saying that she is not ready to take that step. [Nyman] also has been repeatedly advised that her weight is exacerbating her symptoms, contributing to her back pain and shortness of breath and incontinency, but has not lost weight.

(Administrative Record at 207-08, 209, 212-13.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Nyman's treatment history, medical history, functional restrictions, activities of daily living, and use of medications in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Nyman's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Nyman's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

16

## 2.   *Graves' Opinions*

Karen Graves, ARNP, is not classified as an "acceptable medical source" under the Social Security Regulations.  Even though Graves is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination.  On August 9, 2006, the SSA issued Social Security Ruling 06-03p.  The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p).  Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a counselor, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p.  Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p.  Instead, there must be evidence from an 'acceptable medical source' for this purpose.  However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p).  In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In his decision, the ALJ addressed Graves' opinions as follows:

As for the opinion evidence concerning her mental limitations, the only opinion in evidence is from Karen Graves, the nurse practitioner who initially treated her at MHC. As previously noted, Ms. Graves opined that [Nyman] was unable to work at the time; however, the duration of her symptoms was expected to be only twelve months. The report was issued in January of 2012, but [Nyman] is still under treatment. The report did not ask, and Ms. Graves did not specify, exactly why [Nyman] was unable to sustain a job. It noted that she had to be allowed to leave a situation if she was feeling overwhelmed, but the term "overwhelmed" is highly subjective and does not provide much guidance as to how a job could be structured to allow her to work without feeling "overwhelmed." It is also difficult to understand what she means by "leaving a situation." For example, many employers accommodate flexible breaks, but few allow simply walking off the job. It is noted that Ms. Graves is not a psychologist or psychiatrist or a licensed professional counselor and lacks the qualifications necessary to render a persuasive opinion. Moreover, her opinion is simply not very helpful in assessing why it is that she concluded [Nyman] is unable to work. Moreover, [Nyman] had only seen Ms. Grave[s] a few times when the report was issued. As a result, it is not very persuasive.

(Administrative Record at 210.) Additionally, in his decision, the ALJ thoroughly reviewed Nyman's mental health history and treatment, and noted inconsistencies between her claims of disability and her functional abilities and successful treatment.[8] For example the ALJ concluded that:

[Nyman] asserts that she is unable to work because she simply cannot cope and is easily "overwhelmed" at work. However, there is little evidence as to precisely what she finds overwhelming. This seems to be a rather vague description of why she is unable to adjust to a work setting. In addition, she

---

[8] *See* Administrative Record at 208-210 (ALJ's review of Nyman's mental health history and treatment).

claims that she cannot work two days a week because of her psychological symptoms and that she lost her last job because she missed work, even though she was only working 10 hours a week or less. The severity of the symptoms she claims conflict with her seeming ability to parent her children and run her household. She has limitations, but it is difficult to see how someone who has the ability to all that she does is simply unable to function in a work setting, especially given the fact that she is being treated for her symptoms with medication and therapy.

(Administrative Record at 210.)

Having reviewed the entire record, the Court finds that the ALJ properly considered Graves' opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly articulated his reasons for finding Graves' opinions to be "not very persuasive," and for finding her opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010 (Providing that in considering the opinions of ꞌa medical source that is not an "acceptable medical source," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."); *see also Kirby*, 500 F.3d at 709 (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence); *Sloan*, 499 F.3d at 889 (providing that a factor to consider in weighing evidence from a medical source that is not an "acceptable medical source" is the consistency of such as source's opinions with the record as a whole). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. *Hypothetical Question*

Nyman argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Nyman also

argues that the ALJ's hypothetical did not contemplate all of her functional limitations. Nyman maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Nyman's testimony in determining Nyman's impairments and functional limitations.[9] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

---

[9] *See* Administrative Record at 206-213.

## V. CONCLUSION

The Court finds that the ALJ properly determined Nyman's credibility with regard to her subjective complaints of disability and pain. The Court also finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Karen Graves, Nyman's treating nurse practitioner. Lastly, the ALJ's hypothetical question to the vocational expert properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.    Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this ___1st___ day of December, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA